UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-20458-BLOOM/Elfenbein

**UNITED STATES OF AMERICA**,

v.

**JOE VONZO READON**,

  Defendant.
_____/

## REPORT AND RECOMMENDATION ON EMERGENCY MOTION FOR COMPASSIONATE RELEASE AND REDUCTION OF SENTENCE

**THIS CAUSE** is before the Court on Defendant, Joe Vonzo Readon's ("Readon") Emergency Motion for Compassionate Release and Reduction of Sentence to Time Served with Home Confinement as Amended by the First Step Act of 2018 (the "Motion"), ECF No. [91]. The Honorable Beth Bloom referred the Motion to me for a Report and Recommendation. ECF No. [93]. For the reasons explained below, I respectfully **RECOMMEND** that the Motion, ECF No. [91], be **DENIED**.

I.   BACKGROUND

The investigation involving Readon started with a series of controlled drug buys through a confidential informant. *See generally* ECF No. [53]. The first controlled buy, involving cocaine, took place on January 8, 2019 followed by a second controlled buy on January 22, 2019. *Id.* at ¶¶10-16. During the third buy, on March 6, 2019, law enforcement detained Readon while a narcotics detection dog searched his vehicle for the presence of narcotics, locating 29 grams of cocaine in a plastic bag, 60.6 grams of crack cocaine individually packaged for sale, and 20.1 grams of marijuana individually packaged for sale. *Id.* at ¶20. Law enforcement subsequently obtained and executed a search warrant for Readon's home where they located the following: a

Glock 27 firearm, a black 9-millimeter magazine, a black 22-round magazine, three .40-caliber rounds, a black bersa .380-caliber firearm, 36 .380-caliber rounds, $33,180.00 in U.S. currency, approximately 15.5 grams of cocaine, 23.3 grams of crack cocaine, and 2 grams of marijuana. *Id.* at ¶22. In a post-*Miranda* interview, Readon admitted to owning the firearms but denied knowledge of the controlled substances. *Id.* at ¶23.

A grand jury in the Southern District of Florida thereafter returned a three-count Superseding Indictment, charging Readon with possession with intent to distribute a controlled substance, consisting of a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 1); possession with intent to distribute a controlled substance, consisting of a detectable amount of cocaine, marijuana, and cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count 2); and felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (Count 3). In December 2019, Readon pled guilty to Count 3 of the Superseding Indictment. *See* ECF No. [53] at ¶1. At the time of his change of plea, Readon had the benefit of a pre-plea Presentence Investigation Report ("PSI") that estimated his advisory guideline range as 262 to 327 months' imprisonment. *Id.* at ¶4. Notwithstanding the advisory guideline range, Readon and the Government agreed to recommend a sentence at the 15-year statutory minimum. *Id.*

According to the PSI, Readon was deemed an armed career criminal as he had three prior convictions for a violent felony or a serious drug offense, yielding a base offense level of 34. *Id.* at ¶36. After a three-level reduction for acceptance of responsibility, Readon's adjusted offense level was 31. *Id.* at ¶¶37-39. As for criminal history, because of his status as an armed career criminal, Readon's criminal history category was ultimately a VI, making his advisory guideline range 188 to 235 months' imprisonment with a 15-year mandatory minimum. *Id.* at ¶¶60, 109-

110. At sentencing, this Court adopted the PSI's guideline calculation without objection, and the Parties jointly recommended a downward variance and sentence of 180 months' imprisonment. ECF No. [79] at 6-7, 9, 11. Agreeing with the Parties, the Court ultimately sentenced Readon to a term of imprisonment of 180 months, the mandatory minimum. *Id.* at 12-13; *see generally* ECF No. [67].

In the Motion, Readon now asks the Court to grant him compassionate release and allow him to serve the remainder of his sentence in home confinement at his home with his wife. ECF No. [91] at 3. In support of his request, Readon argues that there are extraordinary and compelling circumstances for his release as he has a variety of medical issues, including a prior heart valve replacement that will require replacement in the future, a recent valve infection, a hernia that is pressing on his lungs, severe back and shoulder pain from an automobile accident in 2012, and a prostate removal in 2011 as a result of prostate cancer. *Id.* at 2. Readon also cites to a series of mental health disorders from which he suffers, such as depression, anxiety, and bi-polar disorder, and his prior contraction of Covid-19. *Id.* As an additional argument to support his release, Readon states that his health conditions make him more vulnerable to Covid-19, and the conditions at Atlanta FCI, where he is housed, place him at a greater risk of contracting the virus. *Id.* at 2, 5. Readon supports his Motion with various attachments, including an affidavit from Dr. Brie Williams, dated March 27, 2020, regarding the risk of Covid-19 infections in prisons, his requests for a reduction in sentence submitted to the warden at Atlanta FCI, a small number of medical records, a newsletter, and some memoranda and records from the Bureau of Prisons ("BOP"). *See generally* ECF No. [91-1].

In its Response, the Government denies that Readon suffers from any medical conditions that would support release. Citing to Readon's medical records, the Government points out that

his medical conditions are being appropriately managed within custody, are non-terminal, do not diminish his ability to provide self-care, and that Readon is ambulatory. *See generally* ECF No. [94]. About the Covid-19 conditions at Atlanta FCI, the Response points out that this facility currently has no active cases. Finally, the Government argues that the 18 U.S.C. § 3553(a) factors do not support Readon's early release.

Readon's Reply to the Government's Response was due by April 15, 2024. Given that prisoner submissions are deemed filed on the date they are given to prison authorities for mailing, I have allowed ample time for any Reply to arrive in the mail.[1] As of the date of this Report and Recommendation, which is now three weeks after the deadline, no Reply has been received. As a result, the Motion is ripe for review.

## II. LEGAL STANDARDS

Courts are generally forbidden from modifying a sentence after it becomes final. *United States v. Bryant*, 996 F.3d 1243, 1251 (11th Cir. 2021). However, Congress has authorized three narrow sentence-modification proceedings as outlined in 18 U.S.C. § 3582(c). *Id.* (quoting *United States v. Maiello*, 805 F.3d 992, 1000 (11th Cir. 2015) (internal citations omitted)). Among them is a provision allowing a court to modify a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In addition to finding that such reasons exist, a court must consider the applicable factors set forth in 18 U.S.C. § 3553(a) and determine that the defendant does not pose a danger to the community, as provided under 18 U.S.C. § 3142(g), and that the reduction is "consistent with the applicable policy statements issued by the Sentencing Commission." 18

---

[1] "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (quoting *United States v. Glover*, 686 F.3d 1203, 1205 (11th Cir. 2012)).

U.S.C. § 3582(c)(1)(A). The applicable policy statement is in U.S.S.G. § 1B1.13 and is binding on the courts in this Circuit. *Bryant*, 996 F.3d at 1262.

Effective November 1, 2023, the Sentencing Commission amended the applicable policy statement and expanded the list of extraordinary and compelling reasons that warrant compassionate release. U.S.S.G. § 1B1.13(b). Now, a court may find that such reasons exist if any of the following circumstances, or a combination thereof, exist:

> (1) *Medical Circumstances of the Defendant.*—
>
>> (A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (B) The defendant is—
>>
>>> (i) suffering from a serious physical or medical condition,
>>>
>>> (ii) suffering from a serious functional or cognitive impairment, or
>>>
>>> (iii) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>>
>> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>>
>> (D) The defendant presents the following circumstances—
>>
>>> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

>       (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
>       (iii) such risk cannot be adequately mitigated in a timely manner.
>
>    (2) *Age of the Defendant.*—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.[2]

U.S.S.G. § 1B1.13(b)(1)-(2).

Prior to filing a motion for compassionate release, § 3582(c)(1)(A) also requires that the defendant exhaust his or her administrative remedies. If a defendant fully exhausts all administrative rights to appeal the BOP's failure to file a motion on the inmate's behalf *or* if 30 days lapse from the time the warden receives the inmate's request, whichever is earlier, a defendant satisfies the exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A).

In sum, for a court to grant a request under § 3582(c)(1)(A), it must find: (1) the defendant exhausted his or her administrative remedies, (2) extraordinary and compelling reasons exist that warrant compassionate release, (3) the defendant is not a danger to the community, and (4) the relevant factors under § 3553(a) are consistent with granting relief. *United States v. Mesa*, No. 16-CR-20715, 2023 WL 2045752, at *4 (S.D. Fla. Feb. 16, 2023). It is the defendant's burden to satisfy all the foregoing criteria. *Id.* (citing *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013)).

---

[2] In addition, a defendant may raise other extraordinary and compelling reasons — none of which apply here — such as family circumstances of the defendant, the defendant as a victim of abuse, an unusually long sentence, and "other reasons." U.S.S.G. § 1B1.13.

### III.    DISCUSSION

#### a. Exhaustion of Administrative Remedies

Here, there is no dispute that Readon has exhausted his administrative remedies. Attached to his Motion is Readon's request to the warden at Atlanta FCI, dated November 3, 2023, along with the warden's December 14, 2023 response, denying the request and explaining that the medical staff reviewed Readon's activities of daily living and determined that he does not satisfy the criteria for a debilitated medical condition. *See* ECF No. [91-1] at 35-40. In addition, in its Response, the Government does not raise any arguments suggesting that Readon failed to exhaust. Readon has, therefore, satisfied this requirement.

#### b. Extraordinary and Compelling Circumstances

Although Readon satisfied the first requirement of a motion for compassionate release — exhaustion, I find that he has not presented any extraordinary and compelling circumstances that would warrant his release. In support of his Motion, Readon argues that extraordinary and compelling conditions exist for two reasons: (1) he suffers from serious medical conditions, and (2) he is more susceptible to an increased health risk if exposed to Covid-19 at Atlanta FCI. Although Readon does not specify the subsection of the policy statement on which he relies to support his arguments, I have liberally construed his *pro se* Motion, as I must,[3] and have considered all potential subsections of U.S.S.G. § 1B1.13 that discuss a medical condition in the context of an extraordinary and compelling circumstance.

Starting with his health conditions, none of his medical conditions satisfy the criteria of U.S.S.G. § 1B1.13 and rise to the level of an extraordinary and compelling circumstance. Readon first argues that 16 years ago, he had two heart valves replaced and a third one replaced

---

[3] "A document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

with a porcine valve (the latter only lasts 15 years), and that one of the valves recently became infected, leading to a blood infection and causing the other valves to deteriorate. *See generally* ECF No. [91]. Regarding the "recent[]" infection, the medical records attached to Readon's Motion indicate that he indeed suffered from an infection — bacterial endocarditis — but this occurred between November 2021 and January 2022, more than two years ago, and completely resolved. *See* ECF No. [91-1] at 10-15. A review of those documents further indicates that, on April 18, 2023, BOP requested a cardiology consultation for Readon to determine whether he needs a valve replacement. *Id.* at 6. And, according to the information the Government supplied from the BOP, an outside cardiologist evaluated Readon on October 31, 2023 and determined that Readon's symptoms are chronic, he will need a mitral valve repair in the future, but he is currently "stable cardiac wise." ECF No. [96-2] at 53. Rather than make a surgical recommendation, the cardiologist advised Readon to continue his medications as prescribed, diet, exercise, and follow up as needed. *Id.*

Readon also contends that he suffers from a hernia, serious back and shoulder pains, depression, anxiety, and bi-polar disorder, and was diagnosed with prostate cancer in 2011.[4] ECF No. [91-1] at 2, 5. None of these conditions are terminal, and the information that the Government submitted from the BOP negates any indication that Readon is bed-bound or otherwise immobile. ECF No. [96-2] at 53. Neither the medical records that Readon attached to his Motion nor the ones that the Government filed under seal suggest that Readon is unable to provide self-care or that his conditions are debilitating. And, the medical records demonstrate

---

[4] The District Court was aware of Readon's pre-existing medical conditions at the time of his sentencing. ECF No. [79] at 13. His PSI references his 2008 open-heart surgery, his prostate cancer diagnosis and prostatectomy in 2010, and his 2013 car accident that resulted in a lumbar decompression surgery. *See* ECF No. [53] at ¶¶83-85. Likewise, his PSI discussed his prior diagnosis of depression, as early as 2008, and his substance-abuse history. *Id.* at ¶¶ 87, 90-96. At sentencing, the Court acknowledged his age and medical conditions; thus, these medical conditions are not new developments that were previously unknown. ECF No. [79] at 13.

that the BOP is indeed providing Readon with needed medical care by scheduling him for a cardiology consultation, a CT scan of his chest, consultation with a surgeon for a hernia repair, fittings for an orthodontic device, and administering medication for back pain and shortness of breath. ECF No. [96-2] at 2, 5-6, 10-11, 15, 17-18, and 35. *See United States v. Lemy*, No. 20-CR-80062, 2023 WL 246895, at *3 (S.D. Fla. Jan. 18, 2023) (finding that a well-managed medical condition did not "constitute grounds for compassionate release due to the COVID-19 pandemic."); *United States v. Casado*, No. 99-CR-00125, 2022 WL 609611, at *4 (S.D. Fla. Feb. 10, 2022), *aff'd,* No. 22-10605, 2022 WL 7235956 (11th Cir. Oct. 13, 2022) (denying compassionate release when medical records indicated that the defendant's medical conditions were adequately managed in custody and his ailments did not substantially diminish his ability to provide self-care within the correctional facility).

Thus, the medical records do not support a claim that: (1) Readon suffers from any terminal illness under U.S.S.G. § 1B1.13(b)(1)(A); (2) that Readon is suffering from a serious physical or medical condition, suffering from a serious functional or cognitive impairment, or is experiencing deteriorating physical or mental health because of the aging process that substantially diminishes his ability to provide self-care within the correctional facility from which he is not expected to recover under U.S.S.G. § 1B1.13(b)(1)(B); or (3) that he is suffering from a medical condition requiring long-term or specialized care that the BOP is not providing and without which he is at risk of serious deterioration of health or death under U.S.S.G. § 1B1.13(b)(1)(C). Further, he does not qualify for relief under U.S.S.G. § 1B1.13(b)(2) as he is not yet 65 years of age, has not served at least 10 years or 75 percent of his term of imprisonment, and does not appear to be experiencing a serious deterioration in physical or

mental health *because of* the aging process. Although I am sympathetic to Readon's health issues, none of them qualify for relief.

Next, Readon raises concerns about Covid-19 at Atlanta FCI. Notwithstanding the Motion's failure to identify the particular ground for relief, I interpret this argument as raising a claim under U.S.S.G. § 1B1.13(b)(1)(D). Under this subsection, a defendant may present extraordinary and compelling circumstances if (1) housed at a correctional facility affected by or at imminent risk of being affected by an ongoing outbreak of infectious disease, (2) the defendant is at an increased risk of severe medical complications or death due to personal health risk factors, and (3) the risk cannot be appropriately and timely mitigated. U.S.S.G. § 1B1.13(b)(1)(D).

In support of his claim, Readon attaches a four-year-old affidavit from Dr. Brie Williams, dated March 27, 2020, that discusses the risks of Covid-19 in a prison setting. ECF No. [91-1] at 24-31. Much has changed in the last four years as it relates to Covid-19. As the Government points out in the Response, Atlanta FCI currently has no active Covid-19 cases. *See* BOP Inmate COVID-19 Data, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited May 6, 2024); *see also Mesa*, 2023 WL 2045752 at *5 (denying compassionate release on the basis that inmate's medical conditions placed him at greater risk of harm if he contracted Covid-19 as the data regarding the high rate of Covid-19 infections relied upon was outdated). And, according to his medical records, Readon contracted Covid-19 in May 2020, making a full recovery without any indication of long-term consequences.[5] *See* ECF No. [91-1] at 8-10; *United States v. Alvarez*, No. 14-CR-80110, 2022 WL 16856250, at *4 (S.D. Fla. Nov. 10, 2022)

---

[5] Although Readon states he contracted Covid-19 twice while in custody, the medical records attached to his Motion only reveal one instance of Covid-19 infection. *See generally* ECF No. [91-1]. Likewise, the medical records the Government filed under seal do not mention a second Covid-19 infection. *See generally* ECF No. [96-2].

10

(finding that Covid-19 did not present extraordinary and compelling circumstances, in part, because the defendant's medical records indicated he had already contracted Covid-19, and there was no evidence that he was suffering any lasting effects). Thus, there is no indication that FCI Atlanta is affected by or at imminent risk of being affected by an ongoing outbreak of Covid-19; and even if there was, there is no evidence that Readon's past Covid-19 infection increased his risk of severe medical complications due to his personal health risk factors. As a result, U.S.S.G. § 1B1.13(b)(1)(D) does not apply.

In short, none of the reasons that Readon raises constitute extraordinary and compelling circumstances under the applicable policy statement in U.S.S.G. § 1B1.13. Absent such reasons, compassionate release is not available to Readon.

### c. The 18 U.S.C. § 3553(a) Factors and Danger to the Community

Readon's failure to show extraordinary and compelling reasons for release ends the analysis. Nonetheless, I have also considered whether the factors under 18 U.S.C. § 3553(a) support compassionate release and whether Readon poses a danger to the community. "'[B]ecause a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing,' the Court must assess whether 'immediate release would be consistent with those factors,' upon consideration of the circumstances underlying the request for compassionate release and the time remaining in Defendant's sentence." *See United States v. Gonzalez*, No. 17-CR-60223, 2021 WL 4066897, at *6 (S.D. Fla. Sept. 7, 2021) (citing *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020)). When analyzing a motion for compassionate release, the Court must also decide whether the defendant poses a danger to the safety of the community under 18 U.S.C. § 3142(g), but "[t]he factors listed in 3142(g) are

11

largely duplicative of those in 3553(a)." *Id.* (citing *United States v. Martin*, No. CR 98-178, 2020 WL 3960433, at *6 (E.D. Pa. July 13, 2020) (internal citations omitted)).

Starting with the § 3553(a) factors[6] and looking at Readon's history and characteristics, his criminal history does not support relief as he has shown an escalating pattern of criminal conduct well into his late 50s when he committed the offense conduct at issue in the Superseding Indictment. With 16 prior convictions in a span of 33 years, his PSI averages a criminal conviction every other year starting at age 27 when he was first convicted of grand theft. The criminal conduct continued from there with convictions for: assault and battery (age 28); robbery by force (age 29); simple battery and false imprisonment (age 30); battery (age 30); loitering (age 35); possession of cocaine and possession of drug paraphernalia (age 36); sale, manufacture,

---

[6] The sentencing factors under § 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines. . . .
>
>> . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

or delivery of cocaine and possession of cocaine (age 36); possession with intent to purchase cocaine (age 40); possession with intent to purchase cocaine, possession of cocaine, and possession of unlawful article in jail (age 41); trespassing property after warning (age 47); trespassing unoccupied structure (age 47); tampering with evidence (age 47); possession with intent to sell/deliver/cocaine (age 49); possession with intent to sell/deliver cocaine (age 57); and possession of prescription drug, possession of cocaine, vehicle with no tag, driving with license suspended, and seat belt violation (age 58). *Id.* at ¶¶41-56. And, at age 60, he committed the instant offense conduct.

Further, when given the opportunity, Readon has shown an inability to respect the law. His PSI is replete with references to probation violations, starting at age 29 when he violated his probation for testing positive for cocaine, failing to make restitution payments, and failing to report to probation upon release from custody. ECF No. [53] at 43. This pattern continued as he violated probation in the following state cases: (1) F89-045736, (2) F95-032886, (3) F96-009729, (4) F00-18848A, (5) F01-006712,[7] (6) F17-016069, and (7) F18-004713. ECF No. [53] at ¶¶43, 44, 47, 48, 50, 55, and 56. Thus, Readon's history and characteristics do not weigh in favor of compassionate release and suggest instead a pattern of recidivism.

Compassionate release here would not have a deterrent effect, either specific or general, and would not reflect the seriousness of the offense or provide just punishment. Readon received a 15-year sentence. To date, he has served a little more than five years of his prison term. ECF No. [91-1] at 51. According to the BOP Sentence Monitoring Computation Data, with First Step Act credits, he is not scheduled for release for another seven years, until September 17, 2031. Thus, if released, Readon would have served approximately 33% of his statutory sentence or

---

[7] In case No. F01-006712, the Defendant was adjudicated guilty of possessing an unlawful article in jail. ECF No. [53] at 13. This suggests an inability to obey the law even while in custody.

13

approximately 40% of his full-term sentence.[8] *Id.* at 52. Given the amount of time remaining, immediate release would not be consistent with the § 3553(a) factors.

In support of his position, Readon argues that the conditions at FCI Atlanta are deplorable and that such mitigating evidence should be considered under § 3553(a). *See* ECF No. [91] at 16-17. His claims regarding the conditions at FCI Atlanta, however, are unsubstantiated. Although he attaches two memos from the warden in which commissary spending and social visits were limited for specific periods of time due to inmate misconduct at the facility, *see* ECF No. [91-1] at 46-47, the BOP is permitted to take certain measures to ensure order at the facility. Limitations on commissary spending and social visits, even if true, is not a reason to grant Readon compassionate release, especially when Readon has a lengthy criminal history, a pattern of disregarding the law, and has only served a small fraction of his sentence to date.

Regarding danger to the community, Readon argues that the BOP has classified him as a low-risk inmate and that his age and poor health mitigate against any danger. Although factors such as an older age and health conditions tend to support such an argument, I take note that Readon committed several serious felonies, including the instant one, much later in his life and *after* he suffered from the medical conditions he raises in the Motion. Specifically, he committed the crime of possession of cocaine with intent to sell/deliver in 2008 at age 49, the crime of possession of cocaine with intent to sell/deliver in 2017 at age 57, the crime of possession of cocaine in 2018 at age 58,[9] and the instant offense in 2019 at age 59. *See* ECF No. [53] at ¶¶54-56. Regarding his medical conditions, Readon had open heart surgery with the repair of two heart valves and the replacement of another in 2008, prostate cancer with a prostatectomy in

---

[8] His full-term sentence accounts for credit for good conduct and completion of programming under the First Step Act.

[9] According to the PSI, he possessed 11 clear baggies with crack cocaine and two clear baggies of powder cocaine. ECF No. [53] at ¶56.

2009, and a lumbar decompression surgery because of a car accident in 2013. *Id.* at ¶¶83-85. Despite these serious medical ailments, Readon continued to engage in serious criminal conduct much later in life. With this track record, Readon poses a high risk of recidivism that poses a danger to the community. Neither Readon's age nor his medical history present compelling arguments that he does not pose a danger to the community.[10]

## IV. CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that Defendant Joe Vonzo Readon's Emergency Motion for Compassionate Release and Reduction of Sentence, ECF No. [91], be **DENIED**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

---

[10] Even if none of the foregoing presented an issue, I also have concerns about Readon's proposed release plan in that he seeks to serve home detention at the same residence from which he was distributing controlled substances. Indeed, he expresses a desire to live with his wife at their home. *Id.* at ¶80. This is the same home in which law enforcement found two firearms, ammunition, and controlled substances for distribution. *Id.* at ¶¶ 16, 22. His release plan also references an ability to collect pension payments from his time as a laborer to support himself, but his PSI makes no reference to pension benefits. *See generally* ECF No. [53].

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on May 7, 2024.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record

Joe Vonzo Readon, *pro se*
Reg No. 20362-104
Atlanta U.S. Penitentiary
United States Penitentiary
Inmate Mail/Parcels
P.O. Box 150160
Atlanta, GA 30315